# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **THOMAS E. MULLINS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00041 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Thomas E. Mullins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance."

-1-

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mullins protectively filed his application for DIB on or about March 24, 2003, alleging disability as of March 1, 2003, based on degenerative disc disease, arthritis, deteriorating bone disease, depression, numbness of the arm and hand and difficulties with memory and concentration. (Record, ("R."), at 50-53, 60, 86.) The claim was denied initially and upon reconsideration. (R. at 40-42, 45, 46-48.) Mullins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 49.) The ALJ held a hearing on April 14, 2004, at which Mullins was represented by counsel. (R. at 538-61.)

By decision dated May 25, 2004, the ALJ denied Mullins's claim. (R. at 18-26.) The ALJ found that Mullins met the disability insured status requirements of the Act for disability purposes through the date of the decision. (R. at 25.) The ALJ found that Mullins had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 25.) The ALJ also found that the medical evidence established that Mullins suffered from severe impairments, namely obesity, chronic low back pain that radiated into his legs and chronic neck and shoulder pain that radiated into his right arm, but he found that Mullins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ found that Mullins's allegations were not totally credible. (R. at 25.) The ALJ found that Mullins retained the residual functional

capacity to perform light work.[1] (R. at 25.) The ALJ found that Mullins could perform his past relevant work as a trainer and a security guard. (R. at 25.) Thus, the ALJ found that Mullins was not disabled under the Act and was not eligible for DIB benefits. (R. at 26.) *See* 20 C.F.R. § 404.1520(f) (2005).

After the ALJ issued his decision, Mullins pursued his administrative appeals, (R. at 13), but the Appeals Council denied his request for review. (R. at 5-8.) Mullins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Mullins's motion for summary judgment filed January 13, 2006, and the Commissioner's motion for summary judgment filed February 9, 2006.

## *II. Facts*

Mullins was born in 1948, (R. at 50), which classifies him as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Mullins has a high school education and training in mechanics. (R. at 541.) He has past relevant work experience as a mechanic, a training technician and a security guard. (R. at 61, 69.) Mullins testified that he could sit for up to 20 minutes without interruption and stand for up to 30 minutes without interruption. (R. at 551-52.)

In rendering his decision, the ALJ reviewed records from Dr. Jerry L. Miller, M.D.; Tennessee Eastman Company; Dr. Reynard C. Odenheimer, M.D., a

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2005).

-3-

neurologist; Dr. Daniel F. Klinar, M.D.; Dr. Vaughan D. Hall, M.D.; Dr. Sherri Hansen-Bundy, M.D.; Dr. Ken W. Smith, M.D.; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist. Mullins's attorney also submitted additional medical records from Outpatient Diagnostic Center, Dr. Ronald Smith, M.D., and Blue Ridge Neuroscience Center.[2]

Mullins received treatment at the Medical Department of Tennessee Eastman Company from 1973 through January 2003 for routine medical care as well as treatment for recurrent low back pain, neck pain, shoulder pain, dizziness, migraine headaches, allergies, right hip pain, weight gain, anxiety, diverticulitis and hypertension. (R. at 97-109, 115-17, 121-22, 126, 129-39, 222-27, 230-59, 287-481.)

Mullins received treatment from Dr. Jerry L. Miller, M.D., from January 1990 through January 1996 for various complaints such as back, hip and leg pain, abdominal discomfort, degenerative disc disease, spastic colon disease and anxiety. (R. at 91-96, 110-14, 118-20, 123-25, 127-28, 228-29.) In January 1990, Mullins complained of some stress reaction and was diagnosed with anxiety. (R. at 96.) In March 1990, he reported that he was doing well. (R. at 96.) In October 1991, Mullins again reported being under a lot of stress as a result of being on the school board and other public service committees. (R. at 229.) He was again diagnosed with anxiety. (R. at 229.) In June 1992, Mullins reported that he was doing exceptionally well, and Dr.

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Miller indicated that he planned to discontinue Mullins's prescription for Xanax within six months. (R. at 229.)

On February 23, 1995, an MRI of Mullins's lumbar spine revealed a right disc protrusion at the L4 level with impingement on the anterior margin of the thecal sac and most likely right L5 nerve root. (R. at 110-11.) Mild central canal stenosis and mild degenerative facet arthropathic changes also were noted. (R. at 110.) On October 16, 1995, Dr. Miller diagnosed degenerative joint disease and degenerative disc disease of the lumbosacral spine. (R. at 114.) He indicated that Mullins should not be required to perform prolonged walking, repeated squatting or bending or repetitive movement of items weighing 10 pounds. (R. at 114.) He also indicated that Mullins could lift items weighing up to 20 pounds. (R. at 114.) Dr. Miller indicated that these restrictions were permanent. (R. at 114.) The record shows that Dr. Miller conservatively treated Mullins's complaints of back and leg pain with Anaprox and Lortab. (R. at 159-69.)

In April 1995, Dr. Daniel F. Klinar, M.D., saw Mullins for his complaints of low back pain. (R. at 143-44.) Straight leg raising tests were negative. (R. at 144.) Mullins had normal strength in all muscle groups, and no sensory deficits were noted. (R. at 144.) Dr. Klinar advised Mullins to avoid activity such as flexion, bending, torquing, lifting and prolonged sitting. (R. at 144.)

Mullins received treatment from Dr. Sherri Hansen-Bundy, M.D., from March 14, 2002, through July 15, 2003, for complaints of abdominal pain, chest pain, back pain, anxiety, hypertension, right hand and upper extremity paresthesias and allergic

-5-

Case 2:05-cv-00041-JPJ-PMS   Document 15   Filed 06/15/06   Page 5 of 16   Pageid#: 73

rhinitis. (R. at 149-90.) On August 14, 2002, Mullins complained of intermittent abdominal pain and nausea. (R. at 161-63.) He reported that he consumed several alcoholic drinks throughout the week while visiting with friends. (R. at 161.) He reported that he consumed two to three alcoholic drinks per day. (R. at 162.) In November 2002, Mullins complained of problems with his children and his upcoming retirement. (R. at 159-60.) He admitted that he consumed alcohol on a regular basis. (R. at 159.) Dr. Hansen-Bundy reported that Mullins appeared to be somewhat anxious, and she reminded Mullins that he needed to decrease his alcohol intake. (R. at 159.) She diagnosed gastritis and an anxiety disorder, not otherwise specified. (R. at 160.)

On March 4, 2003, an MRI of Mullins's lumbar spine revealed degenerative disc disease at the L4-L5 level with mild disc bulging that contacted the right S1 nerve. (R. at 172.) On March 11, 2003, Mullins reported back pain after riding a four-wheeler. (R. at 155.) On April 15, 2003, Mullins reported that his back pain was better since taking medication. (R. at 153-54.) He reported an exacerbation of back pain after helping his son refinish his house. (R. at 153.) He also reported that he was eating out a lot and consuming alcohol at lunch time, to which Dr. Hansen-Bundy attributed his elevated blood pressure and weight gain. (R. at 153.) She reported that Mullins was in no apparent distress. (R. at 153.) A notation on Mullins's blood test results indicated that Mullins was advised to stop consuming alcohol because his liver was starting to show adverse effects. (R. at 178.) On May 30, 2003, an MRI of Mullins's cervical spine showed a mild disc bulge at the C4-C5 disc space and mild to moderate narrowing of the right neural foramen. (R. at 171.) It also showed a moderate disc bulge at the C5-C6 and C6-C7 disc spaces. (R. at 171.) In December 2003, Mullins reported that he had been depressed, but did not want to start medication. (R. at 261-

62.) He reported that he was consuming approximately four alcoholic beverages per day. (R. at 261.) In October 2004, an MRI of Mullins's lumbar spine showed minimal changes in the bulging disc as compared to the 2003 MRI, degenerative disc disease at the L5-S1 level without disc bulging and degenerative disc disease at the L4-L5 level with a fairly prominent disc bulge. (R. at 499.) In November 2004, an MRI of Mullins's cervical spine showed degenerative disc disease at the C5-C6 disc space with minimal posterior osteophytic riding and/or disc bulging and degenerative disc disease at the C6-C7 disc space with minimal posterior osteophytic riding and/or disc bulging. (R. at 497.)

In March 2003, Mullins saw Dr. Ken W. Smith, M.D., for his complaints of low back pain and right lower extremity pain. (R. at 195-98.) He reported situational depression regarding his job. (R. at 195.) Dr. Smith reported no limitation of motion of the head, neck or upper and lower extremities. (R. at 197.) He also reported that Mullins had normal strength and muscle tone. (R. at 197.) In June 2003, Mullins again had no limitation of motion of the head, neck or upper and lower extremities. (R. at 191-94.) Mullins had normal strength and muscle tone. (R. at 192.) Straight leg raising tests were negative. (R. at 192.) Dr. Smith recommended routine home exercises. (R. at 193.) In February 2005, Mullins reported that he consumed liquor frequently. (R. at 529-31.) Dr. Smith reported that Mullins had no limitation of motion of the head, neck or upper and lower extremities. (R. at 530.) He also reported that Mullins had normal strength and muscle tone, and straight leg raising tests were negative. (R. at 530.) Dr. Smith reported that Mullins appeared to be mildly depressed. (R. at 530.) On February 23, 2005, an electromyogram showed carpal tunnel syndrome of both wrists. (R. at 536-37.)

On June 30, 2003, Hugh Tenison, Ph.D., a state agency psychologist, indicated that Mullins suffered from a nonsevere anxiety-related disorder. (R. at 199-213.) He reported that Mullins had no limitation in his ability to perform his activities of daily living, to maintain social functioning, to maintain concentration, persistence or pace and that he had experienced no episodes of decompensation. (R. at 209.) In September 2003, R. J. Milan Jr., Ph.D., another state agency psychologist, affirmed this assessment. (R. at 199.)

On June 30, 2003, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Mullins had the residual functional capacity to perform light work. (R. at 214-21.) He indicated that Mullins's ability to push and/or pull was limited in the upper extremities. (R. at 215.) He indicated that Mullins could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 217.) Dr. Surrusco indicated that Mullins's ability to reach was limited in all directions. (R. at 217.) No other limitations were noted. (R. at 218-19.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on September 4, 2003. (R. at 221.)

On January 21, 2004, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Mullins at the request of Mullins's attorney. (R. at 276-82.) Lanthorn reported that Mullins's affect was somewhat flat and blunted and his mood was depressed. (R. at 277.) Mullins reported that he consumed one or two alcoholic beverages two to three times a week on a fairly regular basis. (R. at 278.) Lanthorn diagnosed generalized anxiety disorder, major depressive disorder, single episode, moderate, and pain disorder. (R. at 281.) Lanthorn indicated that Mullins had a

Global Assessment of Functioning, ("GAF"),[3] score of 50-55.[4] (R. at 281.)

Lanthorn completed an assessment indicating that Mullins had a more than satisfactory ability to understand, remember and carry out simple instructions. (R. at 283-85.) He indicated that Mullins had a limited, but satisfactory, ability to understand, remember and carry out detailed instructions and to maintain personal appearance. (R. at 284.) Lanthorn indicated that Mullins had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out complex instructions and to behave in an emotionally stable manner. (R. at 283-84.) He also indicated that Mullins had no useful ability to deal with the public, to use judgment, to interact with supervisors, to relate predictably in social situations and to demonstrate reliability. (R. at 283-84.)

Mullins received treatment from Ronald Smith, Ph.D., a psychiatrist, from October 2004 through February 2005. (R. at 509-18.) He was diagnosed with an anxiety disorder, not otherwise specified, bipolar disorder and alcohol abuse. (R. at 509-18.) Smith reported in December 2004 that Mullins's depression and anxiety symptoms were mild and that his symptoms had improved. (R. at 511.) In February 2005, Smith reported that Mullins's depression was euthymic and his mood was

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[4]A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32. A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-9-

anxious. (R. at 510.) He also reported that Mullins had moderate anxiety. (R. at 510.) Mullins reported that he continued to consume alcoholic beverages despite Smith's recommendation that he avoid alcohol consumption. (R. at 510, 512-13.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 25, 2004, the ALJ denied Mullins's claim. (R. at 18-26.) The ALJ found that the medical evidence established that Mullins suffered from severe impairments, namely obesity, chronic low back pain that radiated into his legs and chronic neck and shoulder pain that radiated into his right arm, but he found that Mullins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) The ALJ found that Mullins retained the residual functional capacity to perform light work. (R. at 25.) The ALJ found that Mullins could perform his past relevant work as a trainer and a security guard. (R. at 25.) Thus, the ALJ found that Mullins was not disabled under the Act and was not eligible for DIB benefits. (R. at 26.) *See* 20 C.F.R. § 404.1520(f) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason,

-11-

*see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Mullins argues that the ALJ erred in finding that he did not suffer from a severe mental impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-14.) Mullins argues that the ALJ erred by rejecting Lanthorn's assessment. (Plaintiff's Brief at 14-16.) Mullins also argues that the ALJ erred in finding that his condition did not meet or equal the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). (Plaintiff's Brief at 22-25.)

In particular, Mullins contends that the ALJ erred by failing to find that he suffered from a severe mental impairment and by failing to give controlling weight to the opinion of psychologist Lanthorn. (Plaintiff's Brief at 9-16.) The ALJ gave little weight to the assessment of Lanthorn because it was inconsistent with the record as a whole. (R. at 23.) Instead, the ALJ relied upon the assessments of state agency psychologists Tenison and Milan in finding that Mullins did not suffer from a severe mental impairment. (R. at 23, 199-213.) The ALJ also noted that Mullins rarely reported any complaints of a mental impairment to his treating medical sources. (R. at 23, 149-56, 263-64, 269-70.) The ALJ also noted that Mullins's anxiety was controlled with medication. (R. at 23, 267.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d

-12-

1163, 1166 (4th Cir. 1986). The record also shows that Mullins's depression was tied with situational stressors and that he chose not to take any medication for his depression. (R. at 23, 261, 265.) Furthermore, none of Mullins's treating medical sources ever recommended treatment from a mental health professional, nor did they place any limitations on his work-related mental abilities. (R. at 23, 149-56, 193-94, 196-97, 261-70.) While Mullins submitted reports from psychologist Smith to the Appeals Council, these records related to a time period subsequent to the ALJ's decision. (R. at 509-18.) Regardless, a December 2004 treatment note indicates that Mullins's depression and anxiety were considered to be mild and his symptoms had improved. (R. at 511.) Mullins was advised to avoid alcohol consumption. (R. at 513.) Based on my review of the evidence, I find that substantial evidence exists to support the ALJ's decision not to give controlling weight to Lanthorn's assessment. I further find that the evidence supports the ALJ's finding that Mullins did not suffer from a severe mental impairment.

Based on my review of the evidence, I also find that substantial evidence exists in this record to support the ALJ's finding that Mullins's condition did not meet or equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-

Case 2:05-cv-00041-JPJ-PMS   Document 15   Filed 06/15/06   Page 13 of 16   Pageid#: 81

leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2005). Also, the regulations specifically state that the responsibility for determining whether a claimant's condition meets or equals a listed impairment rests with the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2) (2005).

Based on my review of the record, there is no objective medical evidence of any motor loss accompanied by sensory or reflex loss or a positive straight leg raising test. In fact, Dr. Smith reported that Mullins had normal muscle strength, muscle tone, sensation and reflexes. (R. at 192, 197, 530.) Dr. Smith also reported that all straight leg raising tests were negative. (R. at 192, 197, 530.) Therefore, I find that substantial evidence exists in the record to support the ALJ's finding that Mullins's condition did not meet or equal § 1.04(A).

The ALJ found that Mullins had the residual functional capacity to perform light work. He also found that Mullins could perform his past work as a training technician and a security guard. Mullins indicated that these occupations required lifting items weighing less than 10 pounds, standing, walking and sitting up to six hours, no postural movements such as kneeling, crouching or crawling and occasional writing, typing or handling small objects. (R. at 71-72.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Mullins could perform his past relevant work as a training technician and a security guard.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now

-14-

Case 2:05-cv-00041-JPJ-PMS   Document 15   Filed 06/15/06   Page 14 of 16   Pageid#: 82

submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Mullins did not meet or equal § 1.04(A);

2. Substantial evidence exists to support the ALJ's finding that Mullins did not suffer from a severe mental impairment;

3. Substantial evidence supports the ALJ's finding with regard to Mullins's residual functional capacity; and

4. Substantial evidence exists to support the ALJ's finding that Mullins was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mullins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 15th day of June 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE